IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA,                :
                                         :
        Plaintiff,                      :
                                         :
v.                                       :  Criminal Action No. 07-127-SLR
                                         :
SHAWN D. CUFF,                           :
                                         :
        Defendant.                      :

## THE GOVERNMENT'S PRE-HEARING RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

**NOW COMES** the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Shawn A. Weede, Assistant United States Attorney for the District of Delaware, and hereby responds to Defendant's Motion to Suppress Physical Evidence and Statements (D.I. 14), as follows:

### INTRODUCTION

1. The defendant, Shawn D. Cuff, has been indicted with three counts of possession with intent to deliver a controlled substance. These charges arise from evidence obtained pursuant to two vehicle stops of the defendant by members of the Wilmington Police Department ("WPD"): one on July 18, 2007, and the other on July 22, 2007.

2. In his motion, the defendant makes three arguments as to why certain evidence in this case should be suppressed: (a) WPD officers lacked reasonable suspicion to stop him on July 18, 2008; (b) the defendant's admissions given at the WPD Central station on July 18, 2007, were given prior to receiving warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966); and (c) WPD officers did not have reasonable suspicion to detain him on July 22, 2008. The defendant also

requested an evidentiary hearing to "further develop the facts." (D.I. 14 at n.1). That hearing has been scheduled for April 7, 2008, at 3:30 p.m.

3. The Government respectfully submits that all three of these arguments lack merit. Regarding the defendant's first argument, he was stopped on July 18, 2007, for committing a traffic violation; this is a routine and constitutional basis for stopping a vehicle. With respect to the defendant's second argument, his admission given at the WPD Central station on July 18, 2007, was not in response to custodial interrogation; rather, it was an unsolicited statement given by the defendant during the booking process. Accordingly, it is outside the scope of the Miranda doctrine. The defendant's third argument also lacks merit, since the WPD Officers in question not only had reasonable suspicion to stop him initially due to a traffic violation, they likewise had a sufficient basis to continue to detain him since he failed to comply with officer commands and exhibited suspicious behavior. Accordingly, the Government respectfully asserts that the defendant's motion should be denied in its entirety.

## FACTUAL BACKGROUND

4. The Government expects that, at the evidentiary hearing in this matter, it will present testimony to establish the following facts.

### A. The July 18, 2007 Arrest

5. On July 18, 2007, WPD Officer Fox and Probation Officer Cerminaro were in an unmarked vehicle on patrol in the area of 23rd and Spruce Streets in Wilmington, Delaware. The officers observed a grey 2005 Chevrolet Impala and had information that this vehicle was being operated by an individual who was engaging in drug sales from the vehicle. After noticing the vehicle, however, the officers were unable to confirm that the defendant was indeed driving the

Impala, as the vehicle's windows had a dark tint. Officer Fox observed the vehicle make a right hand turn at 23rd and Spruce Street without making a turn signal. After making this observation, Officer Fox radioed to an assisting unit with emergency lights to pull over the 2005 Chevrolet Impala.

6.   After the vehicle was stopped, Officer Fox had the operator roll down the driver's side window and asked both the driver and the passenger – later determined to be defendant, Shawn Cuff and Michael Henry respectively – and asked them for identification. Shortly after the defendant rolled down his window, Fox smelled the odor of burned marijuana emanating from the interior of the vehicle. Fox recognized this smell due to his training and experience in the areas of the identification and trafficking of controlled substances. Fox was also able to see, while looking in the Impala, an open box of clear plastic sandwich bags, which he knew from his training and experience to be used in packaging drugs for resale.

7.   The passenger, Michael Henry, was taken into custody due to an active capias warrant for his arrest. Cuff was asked to step out of the Impala, where he was detained pending the search the vehicle. Fox then radioed for a K-9 unit. After the unit arrived, Fox searched the automobile for the presence of controlled substances with the assistance of the K-9 unit. Pursuant to the search, 35 oxycodone pills were recovered, as well as a clear plastic bag later determined to contain approximately 2.84 grams (gross weight) of crack cocaine. Also recovered was approximately $1547.00 in United States currency, as well as a digital scale.[1]

---

[1] Although some facts surrounding the search of the vehicle are provided to the Court for purposes of background, these events are not discussed in detail since they are not the subject of the defendant's motion. (D.I. 14 at p. 8) (challenging only the initial stop of the vehicle).

8.    The defendant was later arrested and then transported to WPD Central for processing. At that location, Officer Fox began to gather the defendant's personal information for booking purposes, as well as to collect and log the defendant's property.[2] Officer Fox did not read the defendant his Miranda rights at this time, as Fox did not intend on taking the defendant's statement. The defendant, however, gave an unsolicited admission that he and Henry were on their way to buy a large amount of drugs, and that he could provide Fox with information in exchange for his release from custody.

**B.    The July 22, 2007 Arrest**

9.    At approximately 6 p.m. on July 22, 2007, WPD Officers Cramer and Wilkers were in a marked patrol vehicle in Wilmington, Delaware at the area of the 700 block of East 11th Street. This location was known to the officers as being a high-crime area. At that location, the officers saw an African-American male riding a 2006 Avanti moped the wrong way down a one-way street. The officers activated the emergency lights on their patrol vehicle to initiate a vehicle stop. The moped-operator, subsequently identified as the defendant Shawn Cuff, stopped the moped, facing the patrol vehicle.

10.    Officer Wilkers exited the patrol vehicle, walked up to the defendant, and asked him to step off the moped and secure it by putting the kickstand down. The defendant stepped off the moped, but did not put the kickstand down; rather, he held the moped up with his hand. Officer Wilkers again asked the defendant to secure the moped by putting the kickstand down, but

---

[2] The defendant was found to have an additional $519.00 in United States currency on his person.

the defendant did not comply. Instead, the defendant let the moped drop to the ground, despite there being, as far as Officer Wilkers could see, a kickstand on the bottom of the moped.

11.     Officer Wilkers became suspicious of the defendant's behavior and decided to conduct a pat down of the defendant for officer safety. Officer Wilkers asked the defendant to put his hands on his head, to which the defendant complied. Officer Wilkers then stepped to the defendant's rear and secured the defendant by grabbing his belt.

12.     Prior to patting the defendant down, Officer Wilkers asked if he had any sharp objects on his person. The defendant replied, "I'll show you what I have in my pocket," and then reached into his left front pocket with his left hand. Officer Wilkers then tried to take the defendant's left hand out of his pocket and place it back on top of his head; however, the defendant then placed both of his hands in his pockets.

13.     Due to the defendant's behavior, Officers Wilkers and Cramer attempted to put handcuffs on the defendant. The officers were able to secure one handcuff on the defendant's left arm; the defendant then attempted to flee. The situation escalated into a violent struggle on the ground with Cuff and the two officers. During the struggle, Officer Wilkers witnessed the defendant strike Officer Cramer in the forehead with a closed fist, resulting in a minor cut on his forehead. The defendant was eventually detained when other units arrived to assist Officers Wilkers and Cramer.

14.     During the ground struggle, Officer Wilkers noticed a clear plastic sandwich bag in the defendant's right hand, which he was trying to place into his mouth. The bag contained an off-white, chunky substance. After the defendant was secured, Wilkers recovered two (2) plastic sandwich bags from the defendant's hand, each containing an off-white rocklike substance that later

tested positive for cocaine. The defendant and the officers were then taken to the hospital for treatment.[3]

## LEGAL ARGUMENT

15. The Government respectfully asserts that each of the defendant's arguments lack merit and that his motion should be denied.

### A. The Stop of the Defendant's Automobile on July 18, 2007

16. The defendant's first argument is that the WPD officers did not have probable cause to stop Mr. Cuff's vehicle on July 18, 2007. (D.I. 14 at p. 3).

17. The law is clear that "a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations." United States v. Moorefield, 111 F.3d 10, 12 (3d Cir.1997). The defendant does not appear to contest this rule of law; rather, he argues that he "has not received any information to support the officers' asserted grounds for the traffic stop, nor was a traffic violation report included in the materials obtained from the government." (D.I. 14 at p. 3).

18. At the evidentiary hearing, the Government expects that Officer Fox will testify that he stopped the defendant's vehicle after he witnessed two violations of Delaware's Motor Vehicle Code – failure to signal when making a right turn (Del. Code. Ann, tit. 21, § 4155) and improper window tinting (Del. Code Ann, tit. 21, § 4313). Further, contrary to the defendant's argument, the Government provided in discovery a draft copy of Officer Fox's report, which

---

[3] Afterwards, the defendant was brought back to WPD Central where a number of baggies were recovered from his sock. These baggies were later determined to contain forty-one (41) individually wrapped off-white rocklike pieces, which were field tested to contain cocaine. These events are not discussed in detail, however, as they are not the subject of the defendant's motion.

corroborates his testimony. Fox's report not only chronicles the two traffic violations he witnessed, but it also lists the two motor vehicle violations as charges in his report under "Crimes and Associated Information." (Exh. 1 at 00000005). Accordingly, this argument lacks merit and should be denied.[4]

### B.   The Defendant's Statement to Officer Fox on July 18, 2007

19.   The defendant next asserts that his admission at the WPD Central station on July 18, 2007 – namely, that he and Henry were on their way to buy a large amount of drugs, and that he could provide Fox with information in exchange for his release from custody – should be suppressed since Officer Fox did not advise him of his Miranda rights. (D.I. 14 at pp. 3-4).

20.   The Government expects that Officer Fox will testify that at the time the defendant made the above statement, members of law enforcement were not interrogating him about the circumstances surrounding his arrest. Rather, Officer Fox was in the process of booking the defendant; that is, obtaining the defendant's personal information, as well as collecting and logging the defendant's property. Routine booking questions, like the one's asked by Officer Fox, do not trigger the prophylactic shield of Miranda. United States v. Bishop, 66 F.3d 569, 572 n.2 (3d Cir. 1995) (adopting the "routine booking exception" to requirements of Miranda). Moreover, in making the statement in question, the defendant was not actually responding to any particular question by Officer Fox; rather, the defendant volunteered the information in an effort to be released from

---

[4] In passing, the defendant asserts that the July 18, 2007 stop was "pretextual," since the officers were in possession of information that the defendant was involved in drug sales from the vehicle. This type of argument, however, has been rejected by the Supreme Court. See, e.g., Whren v. United States, 517 U.S. 806, 810 (1996) (holding that the decision to stop a vehicle is justified where there is objective probable cause to believe a traffic violation has occurred, regardless of the subjective motives of the officers who conducted the traffic stop).

custody. The Miranda doctrine does not apply to unsolicited statements. E.g., United States v. Cottman, 497 F. Supp. 2d 598, 605 (D. Del. 2007) ("Furthermore, *Miranda* warnings are not required before a volunteered or spontaneous statement that is not made in response to questioning, even if the suspect is in custody."). Therefore, this portion of the defendant's motion should be denied.

### C. The July 22, 2007 Seizure

21. The defendant's last argument concerns the recovery of two bags of crack cocaine from his person on July 22, 2007, by WPD Officers Wilkers and Cramer. In his motion, the defendant asserts that the officers' seizure of his person was illegal, and as a result, any contraband recovered from him should be suppressed pursuant to the fruit of the poisonous tree doctrine, as articulated in Wong Sun v. United States, 371 U.S. 471 (1963). (D.I. 14 at pp. 5-6). At no point, however, was the detention of the defendant illegal. Indeed, the WPD Officers were justified not only in their initial traffic stop of the defendant, but also in detaining him briefly to investigate his suspicious behavior. Accordingly, this aspect of the defendant's motion lacks merit and should be denied.

#### 1. The Initial Traffic Stop of the Defendant Was Constitutional.

22. Officer Wilkers' initial traffic stop of the defendant, as well as his decision to order the defendant off of the moped, was squarely within the scope of the Fourth Amendment. The Government expects that Officer Wilkers will testify that he stopped the defendant for riding a moped the wrong way down a one-way street. This type of activity, for good reason, constitutes a traffic violation in Delaware. See Del. Code. Ann, tit. 21, § 4121. As articulated above, a police

officer may initiate a traffic stop if he or she observes a violation of the state's traffic regulations. Moorefield, 111 F.3d at 12. Further, for safety concerns, an officer may order an individual stopped for a motor vehicle violation to step out of a vehicle for officer safety without any particularized suspicion. United States v. Bonner, 363 F.3d 213, 216 (3d Cir. 2004).

        2.       There Was Reasonable Suspicion to Warrant Further Detention After the Defendant's Initial Stop.

23.    "After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003). In particular, when an individual takes action that prevents "police from discharging their duty of maintaining oversight and control over [a] traffic stop," there is reasonable suspicion to detain that person for further investigation. Bonner, 363 F.3d at 218.

24.    For example, in Bonner, police officers stopped an automobile for having one headlight out. Id. at 215. As an officer approached the driver's side of the vehicle, the defendant got out and fled. Id. He was later subdued by the officers and found to have crack cocaine in his hands. Id. The district court granted the defendant's suppression motion, concluding that "mere flight when police appear on the scene is not sufficient to establish reasonable suspicion." Id. The Third Circuit reversed. The court reasoned that the defendant "ran from the scene of a legitimate traffic stop without authorization or consent of the officers." Id. at 216-17. "During such a stop," the court concluded, "a police officer has the authority and duty to control the vehicle and its occupants, at least for a brief period of time." Id. at 217. Accordingly, the court held that the

defendant's flight from a lawful traffic stop, "where that flight prevented the police from discharging their duty of maintaining oversight and control over the traffic stop, provided the officers with reasonable suspicion to stop [the defendant] for further investigation." Id. at 218.

25. The facts of the present case are at least as compelling as those found in Bonner. Indeed, not only was the defendant ignoring commands from an officer who was effecting a legitimate traffic stop, he was also engaging in suspicious and threatening activity. After Officer Wilkers had the defendant step off his vehicle, he asked him twice to secure the moped by putting the kickstand down. The Government expects that Officer Wilkers will testify that the defendant refused to comply with these commands, and let a fairly new moped simply drop to the ground. This behavior, coupled with the nature of their surroundings, made Officer Wilkers suspicious of the defendant's actions and concerned for his safety. Moreover, after the defendant was told to keep his hands on his head, the defendant twice stuck his hands into his pockets, one time declaring "I'll show you what I have in my pocket." Finally, when the officers attempted to place handcuffs on the defendant for their safety, he struggled and attempted to flee. Accordingly, given these actions by the defendant, it was reasonable for WPD Officers Wilkers and Cramer to continue to detain the defendant in order to further investigate his activity, as well as to maintain control of the traffic stop. Bonner, 363 F.3d at 215-18.

## CONCLUSION

**WHEREFORE,** the United States requests that the Court deny defendant's Motion to Suppress Physical Evidence and Statements.[5]

Respectfully submitted,

COLM F. CONNOLLY
UNITED STATES ATTORNEY

BY:  /s/ Shawn A. Weede
Shawn A. Weede
Assistant United States Attorney

Dated: March 31, 2008

---

[5]  The Government respectfully reserves the right to file a Memorandum of Law in support of its response after the completion of any evidentiary hearing in this matter.

# EXHIBIT 1

08/24/2007 17:46 FAX                                                                 ☒006

| age: 1 | Report Date: 07/18/2007 | Agency: WILMINGTON PD | Complaint#: |
|---|---|---|---|
| Reported Date and Time: WED 07/18/2007 1958 | | Initial Crime Report | Occurred: WED 07/18/2007 1958 |

Location: 899 E 22nd ST   Wilmington, DE 19802

LO, and Incident Overview:
The below listed defendants possessed with the intent to deliver crack cocaine and percoct.

| Grid: 060-401 | Sector: 13 | County: New Castle | Domestic Related: ☐Yes ☒No | 4-F-14 Sent? ☐Yes ☒No | Gen Broadcast Sent? ☐Yes ☒No |

## Victim Information

| Victim Number: 001 | Name: |
| Type: Society/Public | Sex: | Race: | Ethnic Origin: | Age: | D.O.B.: |
| Address: | | Resident Status: | Home Telephone: | Cell Phone: |
| Reporting Person? ☐Yes ☒No | Victim Injured? ☐Yes ☒No | Victim Deceased? ☐Yes ☒No | Officer Comments: |
| Injuries: | | Description of Injuries: |

## Suspect/Defendant Information

| Sequence: 001 | Type: Defendant | SBI Number: [redacted] | Name: CUFF, SHAWN D | Nick Name: |
| Sex: [redacted] | Race: [redacted] | Ethnic Origin: | Age: | D.O.B.: | Height: | Weight: | Skin Tone: | Eye Color: Brown |
| Hair Color: Brown | Hair Length: | Hair Style: | Facial Hair: | Voice Speech: | Teeth: | Build: | Glasses: |
| Disguise: | Disguise Color(s): | Resident Status: Non Resident | Unusual Characteristics: | Armed With: Unarmed |
| Address: [redacted] | | Home Telephone: [redacted] | Cell Phone: |
| Arrest Number: [redacted] | Arrest Type: Warrant | Suspect's Clothing Description: |
| Employer/School: N/A | | Work Telephone: |

| Sequence: 002 | Type: Defendant | SBI Number: [redacted] | Name: H[redacted], M[redacted] | Nick Name: |

[remainder of second defendant's information redacted]

## Crimes and Associated Information

| Victim Number: 001 | Crime Seq: 001 | Statute: DE:21:4313:000C:M: | Crime Description: Operating a Vehicle With Improper Window Tinting |
| Location Of Offense: Highway/Roadway/Alley/Street | Status: Adult Arrest 07/18/2007 | Involvement: ☐Alcohol ☐Drugs ☐Computer | General Offense: |
| Suspected Hate/Bias: ☐Yes ☒No - N/A | Crime Code: 5499 - Traffic Offense/Free Text |

| Victim Number: 001 | Crime Seq: 002 | Statute: DE:21:4155:000a:M: | Crime Description: No Person Shall Turn or Move a Vehicle without giving proper Signal |
| Location Of Offense: Highway/Roadway/Alley/Street | Status: Adult Arrest 07/18/2007 | Involvement: ☐Alcohol ☐Drugs ☐Computer | General Offense: |
| Suspected Hate/Bias: ☐Yes ☒No - N/A | Crime Code: 5499 - Traffic Offense/Free Text |

| Victim Number: 001 | Crime Seq: 003 | Statute: DE:16:4751:000A:F:C | Crime Description: Possession With Intent to Deliver a Narcotic Schedule I Controlled Substance |

| Reporting Officer: PTL FOX - [redacted] | Pending Supervisory Review: |

00000005

08/24/2007 17:46 FAX ▓▓▓▓▓▓▓▓▓▓ ▓007

| ▓▓▓ 2 | Report Date: 07/18/2007 | Agency: WILMINGTON PD | | Complaint: ▓▓▓▓▓ |

## Crimes and Associated Information

| Location Of Offense | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley/Street | Adult Arrest 07/18/2007 | ☐Alcohol ☐Drugs ☐Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No-N/A | 3566 – Synthetic Narcotic/Possession with Intent to Deliver |

Criminal Activity: Possessing/Concealing

| Drugs | Property Category | Quantity | Drug Measure | Drug Type | Date Seized |
|---|---|---|---|---|---|
| | Drugs/Narcotics | 35 | Dosage Unit | Other Depressants | |

Extended Description:
34 ORANGE IN COLOR PILLS MARKED WITH E 700 ON ONE SIDE AND 75/325 ON THE REVERSE SIDE. 1 YELLOW PILL MARKED WITH E 712 ON ONE SIDE AND 10/325 ON THE REVERSE SIDE.

| Victim Number 001 | Crime Seq 004 | Statute DE:16:4751:000A:F:C | Crime Description Possession With Intent to Deliver a Narcotic Schedule II Controlled Substance |
|---|---|---|---|
| Location Of Offense | Status | Involvement | General Offense |
| Highway/Roadway/Alley/Street | Adult Arrest 07/18/2007 | ☐Alcohol ☐Drugs ☐Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No-N/A | 3556 – Cocaine/Possession with Intent to Deliver |

Criminal Activity: Possessing/Concealing

| Drugs | Property Category | Quantity | Drug Measure | Drug Type | Date Seized |
|---|---|---|---|---|---|
| | Drugs/Narcotics | 2.84 | Gram | Crack Cocaine | |

Extended Description:
ONE CLEAR PLASTIC SANDWICH TYPE BAG KNOTTED AT THE TOP CONTAINING AN OFF WHITE CHUNKY SUBSTANCE.

| Victim Number 001 | Crime Seq 005 | Statute DE:16:4755:00A5:F:F | Crime Description Maintaining a Vehicle for Keeping Controlled Substances- |
|---|---|---|---|
| Location Of Offense | Status | Involvement | General Offense |
| Highway/Roadway/Alley/Street | Adult Arrest 07/18/2007 | ☐Alcohol ☐Drugs ☐Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No-N/A | 3593 – Maintaining a Dwelling/Vehicle for Drug Distribution |

Criminal Activity: Possessing/Concealing

| Drugs | Property Category | Quantity | Drug Measure | Drug Type | Date Seized |
|---|---|---|---|---|---|
| | Drug/Narc Equipment | | | | |

Extended Description: CRACK COCAINE

| Victim Number 001 | Crime Seq 006 | Statute DE:16:4771:000a:M:A | Crime Description Possession of Drug Paraphernalia |
|---|---|---|---|
| Location Of Offense | Status | Involvement | General Offense |
| Highway/Roadway/Alley/Street | Adult Arrest 07/18/2007 | ☐Alcohol ☐Drugs ☐Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No-N/A | 3598 – Possession of Drug Paraphernalia |

Criminal Activity: Possessing/Concealing

| Drugs | Property Category | Quantity | Drug Measure | Drug Type | Date Seized |
|---|---|---|---|---|---|
| | Drug/Narc Equipment | | | | |

Extended Description:
BLACK IN COLOR AWS BLADE 400 DIGITAL SCALE AND NUMEROUS CLEAR PLASTIC SANDWICH BAGS

| Victim Number 001 | Crime Seq 007 | Statute DE:11:0512:0001:F:G | Crime Description Conspiracy Second Degree-Agreement to Engage in Felony Criminal Conduct |
|---|---|---|---|
| Location Of Offense | Status | Involvement | General Offense |
| Highway/Roadway/Alley/Street | Adult Arrest 07/18/2007 | ☐Alcohol ☐Drugs ☐Computer | CNSP – Conspiracy to Commit |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No-N/A | 3566 – Synthetic Narcotic/Possession with Intent to Deliver |

## Victim – Suspect/Defendant Relationships

| Victim – 001 Society/Public | Suspect/Defendant – 001 CUFF, SHAWN D | Victim Offender Relationship Victimless Crime |
|---|---|---|
| Victim – 001 Society/Public | Suspect/Defendant – 002 H▓▓▓▓, M▓▓▓▓▓ | Victim Offender Relationship Victimless Crime |

## Investigative Narrative

This Officer has been employed by the Wilmington Police Department since November 2002, and is currently assigned to the Drug, Organized Crime, Vice Division (Operation Safe Streets). This incident occurred in the City of Wilmington and in the County of New Castle.

| Reporting Officer: PTL FOX – ▓▓▓▓▓ | Pending Supervisory Review: |

00000006



00000006

| age: 3 | Report Date: 07/18/2007 | Agency: WILMINGTON PD | | Complaint: ███████ |
|---|---|---|---|---|

### Investigative Narrative - Continued

On the 18th of July 2007 members of Operation Safe Streets were in the area of 23rd and pruce Streets. This Officer and Probation Officer C█████ were operating a departmental ssued unmarked vehicle. These Officer observed a 2005 Chevrolet Impala grey in color bearing E registration 221859 traveling east bound on 23rd Street. The mentioned Chevrolet's front assengers and drivers side windows were tinted in such a manner that these Officer were nable to see the occupants of same. The mentioned vehicle proceeded east bound and made a ight turn without using a turn signal at 23rd and Spruce Streets. These Officers communicated he direction of travel of the mentioned Chevrolet to assisting units so a motor vehicle stop ould be conducted by a unit with emergency equipment. A vehicle stop was conducted in the 800 lock of E. 22nd Street. Upon making contact with the operator of the vehicle Shawn Cuff █ ██████ this Officer could smell due to his training and experience the odor of burned iarijuana eminating from the interior of the vehicle. Cuff was asked to provide his drivers icense, registration and proof of insurance for the vehicle he was operating. The front assenger M█████ H████ BM ████████ was also asked to provide identification. As Cuff and H████ rere providing the requested information this Officer observed an open box of clear plastic andwich bags in plain view behind the passenger seat on the floor. Due to this Officer raining and experience this Officer knows that clear plastic sandwich bags are commonly used o package drugs for resale.

A DELJIS inquiry was conducted which revealed that H████ currently has an active capias issued by NCC Court of Common Pleas. H████ was taken into custody at this point without incident. Cuff was asked to exit the vehicle and was at this time detained. This Officer requested that K-9 Officer Press and his K-9 partner respond to our location in reference to odor of marijuana that was eminating from inside the vehicle. K-9 Officer P█████ K-9 partner positively indicated on the mentioned Chevrolet for the presence of drugs (see supplement for further details). Officer P████ advised that his K-9 partner indicated on the following areas of the interior of the vehicle; the drivers side door and the center console located between the front drivers and passenger seats.

Upon searching the interior compartment of the vehicle Officer N█████ located the following items; in the side compartment of the drivers side door a clear plastic bag that contained (34) orange pills stamped E700 on one side and 75/325 on the reverse side and (1) yellow pill stamped E712 on one side and 10/325 on the reverse side. The mentioned orange pills were later identified to be percoct and the yellow pill was identified to be endoct through the "Drug Identification Bible" both of which are schedule I narcotic controlled substances. Also in the compartment of the drivers side door was a clear plastic bag knotted at the top that contained an off white chunky substance (later field tested positive for the presence of cocaine with a preliminary weight of 2.84 grams). In the center console located between the front drivers and passenger seats Officer N████ located $800.00 bundled together in $100.00 increments and a black in color AWS Blade 400 digital scale, which is commonly used to weigh amounts of drugs for packaging and resale. Inside the glove compartment of the vehicle Officer Dupont located $747.00.

Cuff and H████ were transported to central for processing. While at central Cuff was found to be in possession of an additional $519.00 that was located inside his right pocket. While Cuff's property was being collected he made the following unsolicited statement; Cuff stated that he and H████ were on their way to buy a large amount of drugs, and he could provide these Officers with information in exchange for his release from custody. The $2066.00 that was located inside the vehicle and on Cuffs person was tagged as evidence and entered into records. A notification of forfeiture was completed for the money as well as for the mentioned Chevrolet (impound #54448). The mentioned percoct, endocet and crack cocaine were tagged as evidence and entered into records

| Reporting Officer PTL FOX -72983 | | Pending Supervisory Review: | | |
|---|---|---|---|---|
| Detective Notified | | Referred To | | |
| Solvability Factors | ☐ Witness ☐ Suspect Located | ☐ M. O. ☐ Suspect Described | ☐ Trace Stolen Property ☐ Suspect Identified | ☐ Suspect Named ☐ Suspect Vehicle Identified | Status: Closed |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>SHAWN D. CUFF, )<br>)<br>Defendant. ) | Criminal Action No. 07-127-SLR |

### CERTIFICATE OF SERVICE

I, Sherry Kaminski, an employee with the United States Attorney's Office, hereby certify that on the 31st day of March 2008, I caused to be electronically filed:

**The Government's Pre-Hearing Response to Defendant's Motion to Suppress Physical Evidence and Statements**

with the Clerk of the Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF. I further certify a copy of the foregoing notice were sent via U.S. mail, postage prepaid, to the attorney of record as follows:

Christopher J. Furlong, Esq.
22 East Third Street
Media, PA 19063

_____
Sherry Kaminski